IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANGIE V. D.,                          )
                                      )
                Plaintiff,            )
                                      )
        v.                            )        1:22CV763
                                      )
MARTIN J. O'MALLEY,[1]                )
Commissioner of Social Security,      )
                                      )
                Defendant.            )

MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE

        Plaintiff Angie V. D. ("Plaintiff") brought this action pursuant to Section 1631(c)(3) of

the Social Security Act (the "Act"), as amended (42 U.S.C. § 1383(c)(3)), to obtain judicial

review of a final decision of the Commissioner of Social Security denying her claim for

Supplemental Security Income ("SSI") under Title XVI of the Act.  The Parties have filed

cross-motions for judgment, and the administrative record has been certified to the Court for

review.

I.      PROCEDURAL HISTORY

        Plaintiff protectively filed her application for SSI on January 19, 2021, alleging a

disability onset date of December 14, 2020.  (Tr. at 16, 163-72.)[2]  Her application was denied

_____

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security, replacing Acting
Commissioner Kilolo Kijakazi. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J.
O'Malley should be substituted for Kilolo Kijakazi as Defendant in this suit.  No further action need be taken
to continue this suit by reason of the last sentence of section 405(g) of the Social Security Act, 42 U.S.C. §
405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #7].

initially (Tr. at 53-60, 69-73), and upon reconsideration (Tr. at 61-68, 82-87). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at. 88-90.) On January 31, 2022, Plaintiff, along with her attorney, attended the subsequent telephonic hearing, at which Plaintiff and an impartial vocational expert testified. (Tr. at 16.) Following the hearing, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 23), and, on July 27, 2022, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review (Tr. at 1-6).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets and quotation omitted).

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (internal quotation omitted). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation omitted). "If there is evidence to justify a refusal to direct a

2

verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets and quotation omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, the claimant is disabled. Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

## III.  DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her application date of January 19, 2021. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 18.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Autism Spectrum Disorder and anxiety[.]

(Tr. at 18.) The ALJ found at step three that neither of the impairments identified at step two, individually or in combination, met or equaled a disability listing. (Tr. at 19-20.) He therefore assessed Plaintiff's RFC and determined that she could perform work at all exertional levels but with the following, non-exertional limitations:

> [Plaintiff is limited to] frequent exposure to fumes, odors, dust, gases or poor ventilation; occasional exposure to noise level 4; and simple, routine tasks in an environment with no fast paced, strict production demands. [Plaintiff] would be able to maintain concentration, persistence, and pace with customary breaks

5

throughout the workday with occasional changes in work setting explained in advance, and frequent contact with supervisors and co-workers, but occasional contact with the public as part of the performance of essential job duties.

(Tr. at 20.)  The ALJ determined at step four of the analysis that Plaintiff had no past relevant work.  (Tr. at 21.)  However, the ALJ concluded at step five that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled under the Act.  (Tr. at 22-23.)

Plaintiff now raises two challenges to the ALJ's decision.  First, she contends that the ALJ "erred in failing to address psychological testing performed on December 1, 2020 and December 14, 2020 when formulating Plaintiff's [RFC]."  (Pl.'s Br. [Doc. #13] at 2.)  Second, Plaintiff argues that "the ALJ erred in evaluating migraine headaches at step 2 of the sequential evaluation process."  (Pl.'s Br. at 2.)  After a thorough review of the record, the Court finds that neither of these contentions requires remand.

A.    Psychological testing

Plaintiff first alleges that the ALJ failed to address all of the relevant evidence in the case record as required by 20 C.F.R. § 1545(a)(3) and Social Security Ruling 96-8p.  Specifically, she asserts that the administrative decision in this case fails to discuss psychological testing performed at LeBauer Behavioral Medicine on December 1 and December 14 of 2020.  (See Pl.'s Br. at 4) (citing Tr. at 348).  As noted in her brief, Plaintiff self-referred for testing because she suspected that she had Autism Spectrum Disorder.  (Pl.'s Br. at 4.)  Based on the testing, including Social Communication Questionnaires completed by both Plaintiff and her mother, Plaintiff was noted to meet the criteria for Autism Spectrum Disorder, falling in the moderate

6

level of severity for social communication and a milder level for restricted repetitive behavior. (Tr. at 352.) Accordingly, her providers recommended counseling, social skills training, medication consultation, educational accommodations, and seeking a support group. (Tr. at 352-53.)

Plaintiff now contends that, because the ALJ failed to specifically mention the findings of the December 2020 evaluations, "it is impossible to know if the ALJ reviewed and considered the entirety of the medical file." (Pl.'s Br. at 6.) She further argues that "as these records are from a medical source and include opinions on Plaintiff's functioning, the ALJ had a duty to address any conflicts between the medical source opinions and the RFC, with an explanation as to why the opinions were not adopted." (Pl.'s Br. at 6.) However, as Defendant notes, the records at issue pre-date Plaintiff's application date. Moreover, the ALJ did, in fact, find that Plaintiff "has been diagnosed with autism spectrum disorder and anxiety, which are severe impairments and can be expected to cause some difficulties." (Tr. at 21.) Thus, the ALJ relied on the diagnosis of Autism Spectrum Disorder in assessing Plaintiff's impairments. Further, the ALJ's inclusion of Autism Spectrum Disorder as a severe impairment at step two of the sequential analysis and his subsequent inclusion of RFC limitations related to this impairment belies Plaintiff's assertion "it is impossible to know if the ALJ reviewed and considered" her Autism diagnosis and related records.

Further, as Defendant correctly notes, the ALJ considered and discussed the opinions of the state agency psychological consultants, Jacquelyn A. Harrison, Ph.D. and Darolyn Hilts, Ph.D, both of whom expressly took Plaintiff's December 2020 evaluation into account when formulating Plaintiff's RFC. (Tr. at 21, 54-55, 64.) Drs. Harrison and Hilts both opined that,

7

based on behavioral testing, treatment notes, and reported symptoms, Plaintiff "was limited to performing simple, routine, repetitive tasks." (Tr. at 21, 56-57, 65-66.) Dr. Hilts also found that Plaintiff "would be able to understand and remember most instructions, sustain concentration persistence and pace for simple tasks, interact with others in settings with limited interpersonal demands and adapt to routine/simple changes in the work environment." (Tr. at 21) (citing Tr. at 65-66). The ALJ found these opinions "persuasive and consistent with the medical evidence of record" (Tr. at 21), and adopted the consultants' findings, along with additional limitations, when formulating his own RFC assessment (see Tr. at 20). In doing so, the ALJ clearly addressed all of the relevant evidence in the case record as required by 20 C.F.R. § 1545(a)(3) and SSR 96-8p.

B.    Migraines

Plaintiff next argues that the ALJ erred by failing to include migraines among Plaintiff's severe impairments at step two of the sequential analysis. As an initial matter, the ALJ's omission of a severe impairment at step two does not, without more, necessitate remand. "As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted).[5] However, in the present case, Plaintiff

---

[5] Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps. Id. However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC. See 20 C.F.R. § 404.1523; SSR 96-8p, 1996 WL 374184, at * 5 (July 2, 1996); SSR 86-8, 1986 WL 68636, at *5 (1986). If the ALJ proceeds to discuss and consider the non-severe impairment at

8

contends that the ALJ's subsequent analysis also failed to account for the effects of her migraine headaches on her ability to work.

At step two, the ALJ acknowledged that Plaintiff had been "assessed with migraine headaches." However, he found that the medical record

> also noted that [Plaintiff] has been prescribed Propranolol which aids in the management of her symptoms. There is no documentation that this minor medical problem has imposed recurring vocationally restrictive limitations for a period of 12 continuous months. Consequently, this minor medical problem has imposed no more than a combination of slight abnormalities, which have had no more than a minimal effect on [Plaintiff's] ability to work.

(Tr. at 18) (internal citation to record omitted). Plaintiff counters that the ALJ failed to consider medical evidence and testimony which contradict these findings. In particular, Plaintiff relies on an initial intake assessment dated January 5, 2021, summarizing Plaintiff's recounting of her history as follows:

> [Y]ou have been having migraine pain about 50% of the days of each month for awhile [sic] (years now) and have not been getting much relief from [A]leve, your usual strategy. You have not taken any prescriptions for migraines since about 15yrs old. You get nausea and vomiting and end up needing to get iv fluids a couple times/yr from migraine-induced dehydration. You have not taken anti-nausea pills at home to prevent this. We'd like for you to [h]ave some medicine on hand for the onset of your next migraine.

(Tr. at 394-95.) Two days later, on January 7, 2021, Plaintiff's providers noted that they were beginning her on propranolol and also recommended a combination preventative supplement for her migraines. (Tr. at 395.) On January 16, 2021, three days prior to Plaintiff's application date and less than two weeks after starting propranolol, Plaintiff reported that the medication

---

subsequent steps, there is no prejudice to the claimant. See Thomas v. Comm'r, Soc. Sec. Admin., No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); Kenney v. Astrue, No. CBD–10–1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result).

had already helped her headache symptoms, noting that her headaches were "less severe, [of] shorter duration, and possibly [of] decreased frequency." (Tr. at 395.) Because the majority of the records relied upon by Plaintiff predate both the period at issue in this case and the improvement of Plaintiff's headaches with appropriate treatment, this evidence has little bearing on Plaintiff's limitations from her application date forward.

Moreover, the record goes on to document continued improvement in Plaintiff's headache symptoms throughout the alleged disability period. On March 11, 2021, Plaintiff reported that 10 mg of propranolol twice a day had "significantly improved [the] frequency and severity of [her] headaches." (Tr. at 395.) In June 2021, Plaintiff again stated that her migraines continued to be "less frequent," although she still reported experiencing 1 to 2 per week. Notably, Plaintiff also reported that "her migraines don't last as long and don't impair her ability to function as much as before." (Tr. at 395.) At her June 2021 appointment, Plaintiff's provider noted that stress was the main trigger for Plaintiff's headaches and offered help with stress management. (Tr. at 395.) The record does not reflect any additional treatment related to headaches for six months, until December 2021, and at that time her providers noted that she had a headache for two days during her college finals and that "[s]tress is main trigger." (Tr. at 400.) The ALJ addressed Plaintiff's headaches in evaluating the RFC, recounting the finding that "stress is a trigger for headaches," along with Plaintiff's history of treatment for headaches, but he further noted that Plaintiff's later records from April 2021 through December 2021 "fail[ ] to document any complaints or significant limitations as a result of" her impairments. (Tr. at 21.) Significantly, Plaintiff provided no medical opinion or other evidence supportive of migraine limitations, and the state agency medical consultants

10

at both the initial and reconsideration levels specifically considered Plaintiff's migraines and found them non-severe. (See Tr. at 54, 63.)

The only remaining evidence supportive of work-restrictive migraine symptoms during the relevant period consists of Plaintiff's own testimony. As reflected in the administrative decision, Plaintiff testified that "[s]he experiences migraines that are a symptom of anxiety." (Tr. at 20.) In light of this testimony, supported by treatment notes documenting that Plaintiff's headaches result from stress, the ALJ treated Plaintiff's migraines as a symptom of a severe impairment, rather than a separate impairment. In the context of Plaintiff's step two challenge, this amounts to a distinction without a difference, as the ALJ clearly considered the effects of Plaintiff's migraines at later steps of the sequential analysis in accordance with the regulations. See 20 C.F.R. § 416.923 (requiring ALJs to consider the effects of both severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC); see also SSR 96-8p, 1996 WL 374184, at *5; SSR 86-8, 1986 WL 68636, at *5.

Specifically, the ALJ included a number of limitations in Plaintiff's RFC which exceed the restrictions opined by the state agency psychological consultants, which, as set out above in subsection A, limit Plaintiff to performing simple, routine, repetitive tasks; understanding and remembering most instructions; sustaining concentration, persistence, and pace for simple tasks; interacting with others in settings with limited interpersonal demands; and adapting to routine changes in her work environment. (Tr. at 21) (citing Tr. at 65-66). To these strictures, the ALJ further limited Plaintiff's exposure to fumes, odors, dust, gases, and poor ventilation as well as her exposure to loud noises in response to Plaintiff's testimony that she "is bothered

by light, noises and smells." (Tr. at 20.) Based on Plaintiff's accounts of stress, particularly her testimony that she "gets overwhelmed trying to keep up with deadlines and has panic attacks" in social situations, the ALJ included RFC restrictions to "no fast paced" work with "strict production demands," only "occasional changes in work setting explained in advance," and only "occasional contact with the public as part of the performance of essential job duties." (Tr. at 20.)[6] The ALJ then concluded that the RFC was supported by the weight of the evidence of record, and that "[t]here are no medical findings of sufficient severity to suggest that [Plaintiff] is unable to perform all work activity" as she claimed. (Tr. at 21.)

Overall, the RFC in this case addresses Plaintiff's complaints of anxiety and stress as supported by the record. To the extent Plaintiff asserts that her migraines required additional limitations, she fails to suggest what, if any, limitations may be appropriate. Moreover, to the extent that Plaintiff bases the alleged severity and symptoms of her migraines on her own testimony, the ALJ found, as set out above, that Plaintiff's condition improved significantly with treatment and that, based on this evidence and the medical opinions of record, her symptoms were not as severe or limiting as alleged. While Plaintiff disagrees with the ALJ's evaluation, Plaintiff is essentially asking the Court to reconsider the decision and re-weigh the evidence and come to a different conclusion than the ALJ. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that

---

[6] Notably, none of the jobs identified at step five of the sequential analysis involve significant interaction with others. (See DOT 209.587-034, 1991 WL 671802; DOT 922.687-058, 1991 WL 688132; DOT 318.687-010, 1991 WL 672755.)

decision falls on the ALJ." <u>Hancock</u>, 667 F.3d at 472 (internal brackets and quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig</u>, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained his decision, and supported that explanation with substantial evidence. Accordingly, the Court finds no basis for remand.

IT IS THEREFORE ORDERED that the Commissioner's decision finding no disability is AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #12] is DENIED, that Defendant's Dispositive Brief [Doc. #19] is GRANTED, and that this action is DISMISSED with prejudice.

This, the 5th day of March, 2024.

   /s/ Joi Elizabeth Peake   
United States Magistrate Judge

Case 1:22-cv-00763-JEP   Document 20   Filed 03/05/24   Page 13 of 13